UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


GREGORY BROWN,                          :
                                        :
            Plaintiff                   :
                                        :
      v.                                :  CIVIL NO. 3:CV-14-623
                                        :
ELLEN MACE-LIEBSON, et al.,             :  (Judge Kosik)
                                        :
            Defendants                  :


**<u>MEMORANDUM</u>**

      Plaintiff, Gregory Brown ("Brown"), is currently confined at the Federal

Correctional Institute at Edgefield, South Carolina.  The matter proceeds on an

amended <u>Bivens</u>[1] complaint filed pursuant to 28 U.S.C. § 1331.  Brown claims

Defendants were deliberately indifferent to his serious medical needs while housed at

the Federal Correctional Institution at Schuylkill ("FCI-Schuylkill"), Pennsylvania. .

Pending is Defendants' motion to dismiss and for summary judgment[2]

_____

      [1] <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>,
403 U.S. 388 (1971).  <u>Bivens</u> stands for the proposition that "a citizen suffering a
compensable injury to a constitutionally protected interest could invoke the general
federal-question jurisdiction of the district courts to obtain an award of monetary
damages against the responsible federal official."  <u>Butz v. Economou</u>, 438 U.S. 478,
504 (1978).

      [2] Because Defendants filed this motion as a combined motion to dismiss and
motion for summary judgment prior to the issuance of any scheduling order, and
because the court entered an order staying discovery and denying Plaintiff's
discovery motions without prejudice to refile (Doc. 54), the instant motion will be

(Doc. 29).

## I.    Allegations in Amended Complaint

Defendants in this matter are FCI-Schuylkill employees Ellen Mace-Liebson, Clinical Director, and Cynthia Entzel, Associate Warden.  Brown alleges that he was weight-lifting on July 2, 2013, when he experienced pain in his lower left back and was unable to straighten his left leg.  With the assistance of a cane, he walked to Health Services where he complained of back pain, a burning sensation in his left shin and problems with his knee.  Brown sought medical attention, but claims he was not examined and told to purchase medication at the commissary.  He states that he had no money.

On July 8, 2013, Brown again reported to sick call with the same complaints and difficulty walking.  He reported to sick call the following day with the same complaints, along with swelling and muscle spasms in his thigh area.  (Doc. 15 at 3.) On this occasion, a physician's assistant thought Brown's problem was "disk related" and "affecting his nerves."  (Id.)  Brown again returned to sick call on July 19, 2013, still complaining of lower left back pain and numbness/swelling in his left shin area. He requested to be seen by Defendant, Dr. Mace-Liebson, and to have an MRI

_____

addressed only as one to dismiss, and Plaintiff given the opportunity to conduct discovery in an attempt to oppose any summary judgment motion filed by Defendant Mace-Liebson.  An appropriate summary judgment motion may be filed after Plaintiff has been afforded the opportunity to conduct discovery with respect to his Eighth Amendment claims against Mace-Liebson.

scheduled.  He did not wish to be seen by a physician's assistant.  Rather, he

requested to be placed on the call-out list.  (Id. at 4.)

On July 23, 2013, Brown returned to sick call for the fifth time.  He filled out a

form indicating he was triaged multiple times already, but was never given a

diagnosis.  He requested that an evaluation be performed by Defendant Mace-

Liebson.  On July 29, 2013, Brown hand-delivered an Inmate Request to Defendant

Entzel seeking intervention.  Defendant Mace-Liebson responded thereto, and

informed Brown that he had been triaged on three (3) occasions and evaluated on a

fourth (4th) occasion, and that he had not completed his work-up or the expected

course of treatment.  He was also informed that a further evaluation was not required

at that time, and that he was to complete the course of evaluation with his assigned

provider.  (Id.)

Brown went to sick call again on July 30, 2013.  On the sick call form, he listed

the same complaints, but also stated he had a swollen knee and extreme discomfort in

his left hip and thigh area.  (Id. at 5.)  Again, he requested to be seen by a physician.

A physician's assistant responded in writing stating that Brown had been referred for

an x-ray and diagnostic studies, and had been educated with respect to exam findings,

including diagnosis, prognosis, treatment and follow-up.  He was also informed that

he would be seen by a physician's assistant at a future call-out.  (Id. at 5.)

The first week of August, Brown approached Defendant Entzel asking if Entzel

was aware of Mace-Liebson's response to his inmate request directed to Entzel.

Brown told Entzel that Mace-Liebson was either misinformed or deliberately

misrepresenting the events. Brown also told Entzel that he had not yet been evaluated,

and only received clinical encounters.   Brown admits that he was given an x-ray on

August 6, 2013.

On August 16, 2013, Brown submitted a request to Entzel documenting his

conversation with him on August 3, 2013.  In particular, Brown said he approached

Entzel outside the Chow Hall, and asked Entzel if he made any inquiries on Brown's

behalf regarding the continued refusal to schedule him for an examination by

Defendant Mace-Liebson for the problems he was enduring.  According to Brown,

Entzel said he emailed Mace-Liebson and was looking into it, but that Mace-Liebson

was away.  In light of the foregoing, Brown asked why he was scheduled to be seen

by a PA on August 16, 2013.

On August 16, 2013, Brown was scheduled to see his assigned primary care

provider - a physician's assistant.  Brown informed the PA that he thought he had a

herniated disk and damage to his sciatica nerve, and therefore wanted to be seen by

Mace-Liebson.  The PA said he would submit the request, but told Brown to purchase

Capsaicin Cream from the commissary.  Another x-ray was performed at some later

point.  Brown alleges he was scheduled to be seen by Mace-Liebson on September 3,

2013, but Mace-Liebson was not at work that day.  He was subsequently evaluated by

Mace-Liebson on September 16, 2013.  He received chiropractic realignment and an order allowing his mattress to be placed on the floor.  (<u>Id</u>. at 7.)

Brown emailed an Inmate Request to Mace-Liebson on October 22, 2013, restating his problems, seeking a cure and requesting an MRI.  (<u>Id</u>.)  He admits to having chiropractic measures performed by Mace-Liebson on September 16, 2013, and being told that over-the-counter medications might help the pain.  On October 30, 2013, Mace-Liebson responded telling Brown to take the matter up with his provider through sick call.  Brown sent back a message stating that he thought Mace-Liebson, as Clinical Director, was the appropriate person to treat him since he had a continuing problem.  (Doc. 15 at 8.)  On November 7, 2013, Mace-Liebson sent Brown a message stating that Brown's sick call provider would refer him if necessary.

Approximately a week later, Brown went to sick call for the seventh time and listed his problems.  The PA, via institutional mail, told him he would be scheduled for an appointment with him, and that his next appointment with Defendant Mace-Liebson was in December.  On November 21, 2013, Brown was evaluated by the PA and prescribed predisone. (<u>Id</u>.)

On December 23, 2013, Brown again sent Defendant Entzel an Inmate to Staff Request seeking his intervention to have Defendant Mace-Liebson order him an MRI. (<u>Id</u>. at 9.)  The following day, Entzel responded telling Brown that an MRI would not be scheduled, since Brown failed to stop weightlifting and exercising as advised.  On

this same date, Brown replied to Entzel that Defendant Mace-Liebson misinformed him, that he had not gone against the advice he was given, and that the MRI was needed.  (Id. at 9.)  Brown believed Mace-Liebson may be retaliating against him for filing grievances about his medical needs.  He again requested that the matter be investigated.[3]

On January 24, 2014, Brown again went to sick call and said he had been there on at least seven (7) occasions since July 2, 2013, with the same complaints.  He complained of pain and suffering without medication, and continuous attempts to have Mace-Liebson schedule an MRI.  According to Brown, the x-rays revealed damage to his L-4 and L-5 lumbar region, and that he was suffering from sciatic nerve disorder.  Yet, despite seven (7) sick call visits and two (2) requests to Entzel, Defendants failed to act to relieve his pain and suffering.  (Id. at 10.)  As such, he maintains that Defendants were deliberately indifferent to his serious medical needs. Brown seeks compensatory, punitive and injunctive relief.

## II.    Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6),

---

[3] Although Brown mentions the word "retaliation," he asserts no facts in support of a retaliation claim and does not allege retaliation as a ground in the amended complaint.  As such, retaliation will not be addressed.

the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the ... claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1947, 173 L. Ed. 2d 868 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Ashcroft v. Iqbal, 556 U.S. 662,

7

129 S. Ct. at 1950, 173 L. Ed. 2d 868 (citing <u>Twombly</u>, 550 U.S. at 555 (requiring

plaintiffs to allege facts sufficient to "raise a right to relief above the speculative

level").  A claim "has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." <u>Iqbal</u>, 556 U.S. 662, 129 S. Ct. at 1949, 173 L.Ed.2d 868.

When the complaint fails to present a prima facie case of liability, however, courts

should generally grant leave to amend before dismissing a complaint unless any

amendment would be futile.  <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108

(3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III.  Discussion

In his amended complaint, Brown alleges that Defendants violated the Eighth

Amendment because they were deliberately indifferent to his serious medical need.

Personal involvement in the alleged wrongdoing is necessary for the imposition of

liability in a civil rights action.  <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005);

<u>Sutton v. Rasheed</u>, 323 F.3d 236, 249-50 (3d Cir. 2003).  Brown cannot base his

claims on the doctrine of <u>respondeat</u> <u>superior</u>.  Plaintiff must demonstrate that each

Defendant was personally involved in the alleged wrongful actions either by actual

conduct, or knowledge of and acquiescence in the wrongful actions.  <u>Rode v.

Dellarciprete</u>, 845 F.2d 1195, 1207-08 (3d Cir. 1988).  Thus, a mere linkage in the

prison chain of command is not sufficient to demonstrate personal involvement.

Courts assess inadequate medical care claims under the familiar "deliberate indifference" test set forth in Estelle v. Gamble, 429 U.S. 97, 103-05 (1976). Under this standard, "evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003(citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  For purposes of this Memorandum, the court will assume Brown had a serious medical need.

The "deliberate indifference" standard requires that the prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994); Natale, 318 F.3d at 582.  The Third Circuit has found "deliberate indifference" in a variety of circumstances, including where: (1) "there was objective evidence that a plaintiff had a serious need for medical care, and prison officials ignored that evidence", and (2) "where necessary medical treatment is delayed for non-medical reasons."  Natale, 318 F.3d at 582 (internal citations,

quotations, and brackets omitted).  Deliberate indifference to a serious medical need

involves the "unnecessary and wanton infliction of pain,"  Estelle, 429 U.S. at 104

and can also be evidenced by the denial of prescribed medical treatment, the denial of

reasonable requests for treatment that results in suffering or risk of injury, Durmer v.

O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of

resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109

(3d Cir. 1990).

However, it is also clear that mere misdiagnosis of a condition or negligent

treatment provided for a condition, is not actionable under the Eighth Amendment

because medical malpractice standing alone is not a constitutional violation.  Estelle,

429 U.S. at 106.  Deliberate indifference is generally not found when some significant

level of medical care has been offered to an inmate, see Gindraw v. Dendler, 967 F.

Supp. 833, 836 (E.D. Pa. 1997), or where claims are based upon the level of

professional care that an inmate has received, see Ham v. Greer, 269 F. App'x 149

(3d Cir. 2008).  Furthermore, it is well-settled that an inmate's dissatisfaction with a

course of medical treatment, standing alone, does not give rise to a viable Eighth

Amendment claim.  See Gause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009);

Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979).

Prison officials, who are not physicians, cannot be considered deliberately

indifferent simply because they failed to respond to the medical complaints of a

prisoner who was already being treated by medical personnel of the prison.  <u>Durmer</u> <u>v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993).  Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 (3d Cir. 2004).  Further, participation in the after-the-fact review of a grievance is not enough to establish personal involvement.  <u>See</u> <u>Rode</u>, 845 F.2d at 1208 (finding the filing of a grievance is not enough to show the actual knowledge necessary for personal involvement).

In the instant case, Defendant Entzel was only operating in her supervisory capacity as the Associate Warden.  Although Brown may have advised her verbally on one occasion, and in writing on two occasions, that he was not receiving the medical care he desired, and that he wanted to be seen by Defendant Mace-Liebson and have an MRI ordered, Entzel was aware that Brown was attending sick call and being provided treatment by the medical personnel at FCI-Schuylkill.  Entzel was not medical personnel, and relied on the decisions being made with respect to Brown's care.  Under <u>Durmer,</u> Entzel cannot be found to have the requisite personal knowledge, and therefore is subject to dismissal from this action.

Without passing judgment as to the ultimate success of Plaintiff's claims against Defendant Mace-Liebson, in construing the complaint in the light most

favorable to Brown, the court will allow said claims to proceed at this juncture. The

court finds that Brown has at least alleged sufficient facts in the complaint to allow

his claim against Mace-Liebson to proceed and to permit Brown to conduct discovery

in an attempt to oppose any summary judgment motion refiled by Mace-Liebson.

Discovery is permitted to take place between Brown and Defendant Mace-Liebson for

three (3) months from the date of this Memorandum.  At that point, the parties may

file appropriate summary judgment motions within thirty (30) days.  While the court

understands that Defendant has already filed a request for summary judgment,

Plaintiff has not been granted the opportunity to conduct discovery, even though in

opposition he has submitted his affidavit and some documentary evidence.  In fact, on

several occasions he has filed requests to file addendums nunc pro tunc.  These

requests will be denied without prejudice at this time.  (Docs. 66-68.)  Brown can

certainly use these documents in his efforts to oppose any summary judgment motion

refiled by Mace-Liebson.[4]  An appropriate order follows.

---

[4] While the court originally stated it would consider the evidence offered by
Brown in deciding Defendants' motion, the court referenced the motion as one to
dismiss, or in the alternative, for summary judgment (emphasis added).  Pending is
Defendants' combined motion to dismiss and for summary judgment.  The court finds
it premature at this time to consider a request for the entry of summary judgment
when Brown's request for discovery was originally denied without prejudice. As
such, the exhibits attached to Document 53, as well as those submitted nunc pro tunc
(Docs. 66-68) will not be considered at this time.  Rather, Brown may submit them
when opposing any summary judgment motion refiled by Defendant Mace-Liebson.