UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GREGORY BROWN, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL NO. 3:14-CV-623 |
| | : |
| ELLEN MACE-LIEBSON, <u>et al.</u>, | : (Judge Kosik) |
| | : |
| Defendants. | : |

**<u>MEMORANDUM</u>**

Plaintiff Gregory Brown ("Brown") is currently confined at the Federal Correctional Institute ("FCI") at Hazelton, West Virginia. The matter proceeds on an amended <u>Bivens</u>[1] complaint filed pursuant to 28 U.S.C. § 1331 and only one Defendant, Ellen Mace-Liebson, remains following the filing of Defendants' motion to dismiss. (Docs. 69, 70.) Brown claims Defendant was deliberately indifferent to his serious medical needs while housed at the FCI- Schuylkill, Pennsylvania. Pending is Plaintiff's renewed motion to compel discovery (Doc. 85). For the reasons

---

[1] <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). <u>Bivens</u> stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal-question jurisdiction of the district courts to obtain an award of monetary damages against the responsible federal official." <u>Butz v. Economou</u>, 438 U.S. 478, 504 (1978).

that follow, the motion will be granted in part and denied in part.

**I.      Background**

The defendants named in this matter were FCI-Schuylkill employees Ellen Mace-Liebson, Clinical Director and Cynthia Entzel, Associate Warden.  Brown alleges that he was weight-lifting on July 2, 2013, when he experienced pain in his lower left back and was unable to straighten his left leg.  With the assistance of a cane, he walked to Health Services where he complained of back pain, a burning sensation in his left shin and problems with his knee.  Brown sought medical attention, but claims he was not examined and told to purchase medication at the commissary.  He states he had no money.

On July 8, 2013, Brown again reported to sick call with the same complaints and difficulty walking.  He reported to sick call the following day with the same complaints, along with swelling and muscle spasms in his thigh area.  (Doc. 15 at 3.)  On this occasion, a physician's assistant ("PA")thought Brown's problem was "disk related" and "affecting his nerves."  (Id.)  Brown again returned to sick call on July 19, 2013, still complaining of lower left back pain and numbness/swelling in his left shin area.  He requested to be seen by Defendant Dr. Mace-Liebson and have an exam scheduled.  He did not wish to be seen by a PA.  Rather, he requested to be placed on the call-out list.  (Id. at 4.)

2

On July 23, 2013, Brown returned to sick call for the fifth time. He filled out a form indicating he was triaged multiple times already, but was never given a diagnosis. He requested that an evaluation be performed by Defendant Mace-Liebson. On July 29, 2013, Brown hand-delivered an Inmate Request to Defendant Entzel seeking intervention. Defendant Mace-Liebson responded thereto, and informed Brown he had been triaged on three (3) occasions, and evaluated on a fourth (4th) occasion, and that he had not completed his work-up or the expected course of treatment. He was also informed that a further evaluation was not required at that time, and that he was to complete the course of evaluation with his assigned provider. (Id.)

Brown went to sick call again on July 30, 2013. On the sick call form, he listed the same complaints, but also stated he had a swollen knee and extreme discomfort in his left hip and thigh area. (Id. at 5.) Again, he requested to be seen by a physician. A PA responded in writing stating that Brown had been referred for an x-ray and diagnostic studies, and had been educated with respect to exam findings, including diagnosis, prognosis, treatment and follow-up. He was also informed that he would be seen by a PA at a future call-out. (Id. at 5.)

The first week of August, Brown approached Defendant Entzel asking if Entzel was aware of Mace-Liebson's response to his inmate request directed to Entzel.

3

Brown told Entzel that Mace-Liebson was either misinformed or deliberately misrepresenting the events. Brown also told Entzel that he had not yet been evaluated, and only received clinical encounters. Brown admits that he was given an x-ray on August 6, 2013.

On August 16, 2013, Brown submitted a request to Entzel documenting his conversation with him on August 3, 2013. In particular, Brown said he approached Entzel outside the Chow Hall, and asked Entzel if he made any inquiries on Brown's behalf regarding the continued refusal to schedule him for an examination by Defendant Mace-Liebson for the problems he was enduring. According to Brown, Entzel said he emailed Mace-Liebson and was looking into it, but that Mace-Liebson was away. In light of the foregoing, Brown asked why was he scheduled to be seen by a PA on August 16, 2013.

On August 16, 2013, Brown was scheduled to see his assigned primary care provider - a PA. Brown informed the PA that he thought he had a herniated disk and damage to his sciatica nerve, and therefore wanted to be seen by Mace-Liebson. The PA said he would submit the request, but told Brown to purchase Capsaicin Cream from the commissary. Another x-ray was performed at some later point. Brown alleges he was scheduled to be seen by Mace-Liebson on September 3, 2013, but Mace-Liebson was not at work that day. He was subsequently evaluated by Mace-

Liebson on September 16, 2013. He received chiropractic realignment and an order allowing his mattress to be placed on the floor. (Id. at 7.)

Brown emailed an Inmate Request to Mace-Liebson on October 22, 2013, restating his problems, seeking a cure and requesting an MRI. (Id.) He admits to having chiropractic measures performed by Mace-Liebson on September 16, 2013, and being told that over-the-counter medications might help the pain. On October 30, 2013, Mace-Liebson responded telling Brown to take the matter up with his provider through sick call. Brown sent back a message stating that he thought Mace-Liebson, as Clinical Director, was the appropriate person to treat him since he had a continuing problem. (Doc. 15 at 8.) On November 7, 2013, Mace-Liebson sent Brown a message stating that Brown's sick call provider would refer him if necessary.

Approximately a week later, Brown went to sick call for the seventh time and listed his problems. The PA, via institutional mail, told him he would be scheduled for an appointment with him, and that his next appointment with Defendant Mace-Liebson was in December. On November 21, 2013, Brown was evaluated by the PA and prescribed prednisone. (Id.)

On December 23, 2013, Brown again sent Defendant Entzel an Inmate to Staff Request seeking his intervention to have Defendant Mace-Liebson order him an MRI. (Id. at 9.) The following day, Entzel responded telling Brown that an MRI would not

5

be scheduled, since Brown failed to stop weightlifting and exercising as advised. On this same date, Brown replied to Entzel that Defendant Mace-Liebson misinformed him, that he had not gone against the advice he was given, and that the MRI was needed. (Id. at 9.) Brown believed Mace-Liebson may had been retaliating against him for filing grievances about his medical needs. He again requested that the matter be investigated.[2]

On January 24, 2014, Brown again went to sick call and said he had been there on at least seven (7) occasions since July 2, 2013, with the same complaints. He complained of pain and suffering without medication and continuous attempts to have Mace-Liebson schedule an MRI. According to Brown, the x-rays reveal damage to his L-4 and L-5 lumbar region, and that he was suffering from sciatic nerve disorder. Yet, despite seven (7) sick call visits and two (2) requests to Entzel, Defendants failed to act to relieve his pain and suffering. (Id. at 10.) As such, he maintains that Defendants were deliberately indifferent to his serious medical needs. Brown seeks compensatory, punitive and injunctive relief.

On March 15, 2016, the court construed a motion to dismiss and for summary judgment as only a motion to dismiss. The motion to dismiss was granted in part and

---

[2] Although Brown mentions the word "retaliation," he asserts no facts in support of a retaliation claim and does not allege retaliation as a ground in the amended complaint. As such, retaliation will not be addressed in this case.

denied in part. (Docs. 69, 70.)  The motion was granted with respect to Defendant Entzel, and she was terminated from this action in that the court found that Entzel was only operating in her supervisory capacity as the Associate Warden.  The motion to dismiss was denied with respect to the claims set forth against Defendant Mace-Liebson and a discovery period of three (3) months was imposed.[3]  Any motion for summary judgment was to be filed within thirty (30) days from the close of discovery.

On June 14, 2016, Plaintiff's motion seeking reconsideration of the court's March 15, 2016 decision was denied.  In addition, Plaintiff's motion to enlarge the discovery period was granted, and Defendant's motion to enlarge the time until June 22, 2016 to respond to amended requests for the production of documents, was also granted. (Doc. 78.)  Discovery was enlarged until August 19, 2016, and any dispositive motions were to be filed by September 19, 2016.  (Id.)  On June 27, 2016, Defendant's nunc pro tunc request to enlarge the time within which she had to respond to Plaintiff's amended requests for production of documents, was granted, and Defendant was afforded until July 8, 2016 to respond to the requests.  (Doc. 80.)

The following day, Plaintiff filed a motion for extension of time within which

---

[3] On September 3, 2015, prior to the time Defendants filed the motion to dismiss and motion for summary judgment, discovery in this action was stayed and Plaintiff's discovery motions were denied without prejudice to renewal of the motion to compel, upon resolution of Defendants' motion to dismiss and for summary judgment. (Doc. 54.)

to file a motion to compel discovery. (Doc. 81.) On July 7, 2016, Plaintiff filed a motion for order compelling discovery (Doc. 82). In the motion, he sought responses by Defendant to renewed written interrogatories submitted to Defendant on April 7, 2016. Prior to any supporting brief being filed by Plaintiff, the court issued an order on July 8, 2016, denying Plaintiff's motion for extension as moot, and denying his motion to compel without prejudice. (Doc. 83.) The motion was denied without prejudice in that Defendant had been granted an enlargement of time within which to submit discovery responses, and Plaintiff was able to file a later motion to compel if he had objections to the responses provided.

On July 21, 2016, the pending renewed motion to compel discovery was filed by Plaintiff. (Doc. 85.) The motion is before the court for review and is ripe. Also, since the filing of this motion, Defendant has been granted leave to depose Plaintiff. (Doc. 93.) In addition, Plaintiff's request for counsel has been denied (Doc. 96), and discovery has been enlarged until October 18, 2016, with any dispositive motions due to be filed by November 17, 2016.

## II.     Motion to Compel Standard

It is well-settled that Federal Rule of Civil Procedure 26 establishes a liberal discovery policy. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). Generally, courts afford considerable latitude in discovery in order to ensure that

litigation proceeds with "the fullest possible knowledge of the issues and facts before trial." Hickman v. Taylor, 329 U.S. 495, 501 (1947). All relevant material is discoverable unless an applicable evidentiary privilege is asserted. Pearson v. Miller, 211 F.3d 57, 65 (3d Cir. 2000).

Federal Rule of Civil Procedure 37 allows a party who has received evasive or incomplete discovery responses to seek a court order compelling additional disclosure or discovery. "The party seeking the order to compel must demonstrate the relevance of the information sought. The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper." Option One Mortgage Corp. v. Fitzgerald, No. 3:07-CV-1877, 2009 WL 648986 at *2 (M.D. Pa. Mar. 11, 2009).

**III. Discussion**

In his renewed motion to compel, Plaintiff seeks the answers to a "renewed" set of written interrogatories sent to Defendant Mace-Liebson after the court's ruling on the motion to dismiss, as well as the answers to a request for the production of documents that was served on and answered by Defendant, then later modified by Plaintiff. (Doc. 88, Pl.'s Sup. Br., at 2.) Plaintiff states that the request for production of documents was sent on or about March 28, 2016, and that the renewed

set of interrogatories were sent on or about April 7, 2016. (Id.) Plaintiff attaches to his brief a copy of his first request for the production of documents and both his first and second sets of interrogatory questions. He also attaches Defendant's responses to his first set of interrogatory questions and his first request for the production of documents. Also included is Defendant's letter stating that the answers will not be provided to the second set of interrogatory questions in that answers are being submitted to the first 25 questions propounded to Defendant. (Doc. 88-1at 1-49.) Plaintiff also attaches a letter he wrote to defense counsel on May 2, 2016, acknowledging Defendant's refusal to answer the renewed interrogatory questions, and claiming that Defendant's position is contrary to the court's order denying without prejudice Plaintiff's original motions for discovery. (Id. at 35.) Plaintiff claims that Defendant must respond to his new interrogatory question. He also argues that he cannot obtain the medical records that he seeks in his Request for the Production of Documents in that he cannot access his records. Health Services, according to Plaintiff, will not allow it. (Id.) Following this letter, Plaintiff sent modifications to his Request for the Production of Documents to defense counsel on May 5, 2016. (Id. at 37-39.) Plaintiff has attached Defendant's response thereto. (Id. at 40-49.)

**A.     Interrogatories**

Prior to the court's issuance of the Memorandum and Order addressing Defendants' motion to dismiss and for summary judgment as only a motion to dismiss, and issuing a time frame within which to complete discovery, (Docs. 69, 70), the Magistrate Judge issued a memorandum opinion on September 3, 2015, staying discovery.  Plaintiff's motion to compel was denied without prejudice to Plaintiff's refiling of his motion following a decision on the potentially dispositive motion and if discovery thereafter ensued and Defendant(s) failed to respond thereto.  (Doc. 54.)  As such, the interrogatories originally submitted to Defendants were not required to be answered at that time, and Plaintiff's motion to compel was denied without prejudice.

Presently before the court is Plaintiff's argument that a second set of 25 questions he propounded on Defendant Mace-Liebson following the court's ruling on the motion to dismiss should take the place of the first set of interrogatories sent prior to the ruling.  According to Plaintiff, the second set of questions are his "renewed" discovery.  However, Defendant Mace-Liebson has answered the first set of questions and refuses to answer the second set, claiming that Plaintiff has exceeded the permissible number of interrogatory questions and is not allowed to do so without having sought leave.

11

In reviewing the docket, the following is clear. Plaintiff did initially submit interrogatory questions in this matter. (Doc. 39.) Defendants responsibility to answer these questions was stayed/deferred until the potentially dispositive motion was decided by the court. After the motion was ruled on as a motion to dismiss, and Defendant Entzel was dismissed from this action, Defendant Mace-Liebson provided responses to the interrogatory questions initially served by Plaintiff. Although, in the meantime, Plaintiff had served Defendant Mace-Liebson with a second set of questions, more elaborate than the first set. Plaintiff renewed the initial motion to compel, which sought responses to the first set of questions. (Doc. 85.) The second set of questions submitted were not the "renewed" first set. For the most part, they were completely different and much more elaborate. Moreover, Plaintiff never initially sought to compel responses to the second set of questions, and more importantly, never sought leave to submit the second set. Defendant Mace-Liebson has answered the first set. Plaintiff does not get the benefit of submitting a second set of questions. Moreover, Plaintiff's proclamation that he does not intend to use any of the responses provided by Defendant to the first set of questions is without consequence. (Id. at 35.) He already received and reviewed the answers.

In reviewing the responses given by Defendant to Plaintiff's interrogatory questions, they have all been properly responded or objected thereto, and the court

12

will not direct any further answers by Defendant. (Doc. 88-1 at 21-31.) For example, some questions are completely answered by Defendant, and therefore require no further response. Further, although some questions are objected to, Defendant goes on to provide the answer anyway. Other questions, such as the name of Defendant's spouse and information pertaining to Defendant's employment prior to the Bureau of Prisons ("BOP") is irrelevant to the instant action. Plaintiff has provided no explanation how this information is relevant to his claims and why it is needed. Further, although Plaintiff delves into the subject of any complaints filed against Defendant while employed with the BOP by inmates, and Defendant objects on the basis of relevancy, Defendant does inform Plaintiff that any complaints filed were found to be frivolous. (Id. at 25.) Some of the questions posed by Plaintiff require no answer, as Defendant informs Plaintiff. Moreover, any request by Plaintiff for specific financial information from Defendant at this time is not only private, but premature. While Plaintiff may be seeking monetary damages from Plaintiff, there is no indication at this juncture that he will ultimately be successful and obtain a judgment against Defendant Mace-Liebson.

**B. Request for Production of Documents**

Plaintiff submitted a Request for the Production of Documents on Defendant on or about March 28, 2016. (Doc. 88-1 at 1-3.) The filing contained twelve (12)

separate requests by Plaintiff.  Defendant responded thereto on or about April 27, 2016.  (Id. at 4-10.)  Defendant states that although she objected to some of the requests, she attempted to provide the information to Plaintiff in the spirit of cooperation, but did so with the understanding that all objections were maintained.  (Id. at 4.)  After providing responses, Plaintiff modified his Requests, and Defendant responded to the modifications.  (Id. at 37-49.)  The court will review the requests/modifications and the responses thereto.

      Request 1 originally asked for any and all electronically stored emails created by any FCI-Schuylkill staff or any other employee or officials in response to any grievance and/or inmate request, filed by Plaintiff.  Plaintiff's original request included, as an example, Joe Rush, A.W. Entzel, Defendant Mace-Liebson, etc.  Defendant objected to the original request as overly broad in scope and time, and tells Plaintiff to be specific in that Plaintiff has filed over 117 grievances since June 2, 2013, and not all of them concerned his instant claims.  In modifying this request, Plaintiff seeks emails between Joe Rush and Defendant Mace-Liebson during the time period from July 8, 2013 through August 25, 2014, as they pertain to Plaintiff, and emails between A.W. Entzel and Mace-Liebson during July 2013 through September 2013, and December 1, 2013 through December 31, 2013, as they pertain to Plaintiff.  In response thereto, Defendant attaches an electronic copy submitted by

Plaintiff to Entzel, as well as Mace-Liebson's response. Defendant also attaches an email dated January 14, 2014, from Mace-Liebson. Defendant informs Plaintiff that no other documents that are currently available are responsive, and that to the extent additional materials are discovered, Defendant will supplement her response. (Doc. 88-1 at 41.) This response is satisfactory. While Plaintiff questions what "currently available" means and believes that other responsive emails exist, Defendant states that they do not, and is under the ongoing responsibility to update her response if she can access any responsive documents.

The court finds that Defendant has adequately responded to Requests 2, 6, 7, 8. Defendant has either provided the responsive documents or stated that no responsive documents exist.

With respect to the medical documents originally requested by Plaintiff, Defendant initially objected to said requests, stating that Plaintiff was able to obtain these documents himself from Health Services. Plaintiff claims that he is unable to review this information on the computer in Health Services, and that it would take in excess of 30 days to obtain his records. However, Defendant has since agreed to provide Plaintiff with a copy of his medical record when it becomes available to

agency counsel.[4]  As such, the answers to Requests 3 and 9 are satisfactory.

The court will next address Requests 4 and 5.  In Request 4, Plaintiff originally asked for any and all logs and documentation illustrating the calendar days when Mace-Liebson was either out sick, on vacation, training or assigned to work at another BOP facility other than FCI-Schuylkill, from July 2, 2013 through August 31, 2014.  Defendant objected to this requests as overly broad and irrelevant because it did not reflect the time period at issue in the complaint.  The request was also objected to in that it sought private information.  In Request 5, Plaintiff sought any and all previously submitted declarations/affidavits of Mace-Liebson, while an employee of the BOP.  This request was also objected to as being overly broad and irrelevant.  Defendant also stated that any declaration she gave would have been filed in a separate lawsuit, and therefore was irrelevant to the instant claims.

In modifying Request 4, Plaintiff stated that the objection by Defendant to this

---

[4] Since Defendant made this statement in July of 2016, the court assumes that Plaintiff has now been provided with a copy of his medical record. While Plaintiff contends in his reply brief that certain sick call requests are "missing," it is assumed by the court that the entire medical record, as it existed, was given to Plaintiff. Plaintiff also alleges in his reply brief that some of his medical records have been altered. He does not claim that Defendant did the "altering." The court has no evidence before it that the records were altered, and Plaintiff admits that if, in fact, they were altered, it was by someone at FCI-Hazelton who is not a party to the instant lawsuit. Most importantly, there is no evidence offered by Plaintiff that the documents have actually been altered.

request was unreasonable, since the daily assignment roster shows whether or not Defendant was working at the institution. Plaintiff states he is not seeking Defendant's whereabouts, and only wants to know the dates when Defendant was not in the institution. The requested time frame in the modified request is July 2, 2013 through July 25, 2014.

     Defendant again objects to this request on the basis that no logs exist to provide Plaintiff with the information he seeks. Only Defendant's personnel file would contain Defendant's work schedule, and Defendant objects to releasing her personnel file in that it contains sensitive information. Further, Defendant states that the medical record she has agreed to produce would evidence all the dates when Defendant or any other staff member treated Plaintiff, and that Plaintiff only seeks this information to see whether Defendant was unavailable on certain dates to see him as he was told by other staff members. Based on the forgoing, even with sensitive information redacted, Defendant maintains that her personnel file is minimally relevant, since the medical record documents when Plaintiff received medical attention and by whom.

     The court agrees that Plaintiff is clearly not entitled to Defendant's personnel file. This document contains sensitive information to which Plaintiff is not entitled and which has no relevance. However, with that said, the court does think that it is

17

relevant when Defendant was at the prison during the relevant time period. This, of course, does not necessarily mean that Defendant should have seen Plaintiff, but it is discoverable information. It really is not relevant where Defendant was on the days she was not there. As such, if a separate roster does not exist that identifies when Defendant was at the prison on the relevant days, then Defendant shall advise the Plaintiff on what days during the relevant time period, she was present at FCI-Schuylkill. While Defendant thinks that it is irrelevant whether she was there or not, as long as another member of the medical staff saw Plaintiff, this is not for Defendant to decide. As such, Defendant shall respond to this request within fifteen (15) days.

In the modified requests, Plaintiff argues that Request 5 is permissible under the discovery rules in that they permit matters that may not be admissible, but is relevant, concerning issues of judgment and credibility. Defendant maintains her objection to this request as overly broad and irrelevant to the claims in the instant lawsuit, and states that Plaintiff fails to say why any declaration or affidavit not about the instant subject matter is relevant. The court agrees, and Defendant will not be directed to respond to this request.

In the original Request for the Production of Documents, Plaintiff had Request 10-12. He does not appear to modify these requests in that the modified requests stop at Request 9. In Request 10, Plaintiff seeks any and all grievances, complaints or

other documents received by prison staff concerning deliberate indifference, negligence, mistreatment (verbal complaints) of inmates by Defendant Mace-Liebson, and any memorandum, investigative files, or other documents created in response to such complaints since January 1, 2005.  Defendant objects to this request as irrelevant, particularly in light of the numerous claims filed by inmates against medical providers.  Defendant also states that to the extent any records of such are kept, she is without access, and that providing investigations into unconnected incidents would jeopardize security and investigative procedures of the BOP.

Related to this request is Request 11, wherein Plaintiff seeks any and all documentations filed by FCI-Schuylkill inmates from January 1, 2011, to the date of Defendant's response concerning the Heath Services Department.  The same objection is raised by Defendant.

With respect to the above requests, it is clear that for the most part, the information sought by Plaintiff is irrelevant to the claims in this case.  Plaintiff seeks grievances and complaints filed by inmates against Defendant since January of 2005 in Request 10 - - this is clearly overbroad and irrelevant.  Merely because an inmate files a complaint or a grievance does not mean that Defendant committed the charged conduct.  What is relevant are any complaints or grievances filed by inmates alleging the denial of medical care against Defendant during the relevant time period that resulted in her discipline.  If there are any such filings, Defendant should so advise

Plaintiff as to the underlying charge and the discipline Defendant received. It would appear, based upon Defendant's response to a similar question asked in the interrogatories, that any complaints filed by inmates against Defendant were found to be frivolous. However, to the extent any documents responsive to this request exists, as discussed by the court, Defendant shall produce them to Plaintiff within fifteen (15) days.

With respect to Request 11, complaints and grievances filed by any inmate against the Health Department are not relevant to the instant claims. What is relevant is covered in Request 10, pertaining to the only remaining Defendant in this action and to which the court has already spoken to.

In Request 12, Plaintiff seeks any and all documents, including but not limited to, the delay and denial or misapplication of medical care procedures and policies created by any FCI-Schuylkill employee from July 2013 to date of response. Defendant objects to this request as irrelevant. Defendant cites the numerous medical complaints filed by inmates, how most are found to be without merit, and how Defendant does not have access to any such records. Clearly this request is overly broad and all-encompassing. Defendant will not be required to respond to this request in that it is mostly irrelevant and Defendant has stated that she does not have access to any such records in any event.

An appropriate order follows.